UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AUGUSTYNIAK INSURANCE          :
GROUP, INC., et al.,           :
       Plaintiffs,           :
                               :
    v.                        :          C.A. No. 11-464S
                               :
ASTONISH RESULTS, L.P.,        :
     Defendant.              :


GRONINGER INSURANCE            :
AGENCY, LLC, et al.,           :
       Plaintiffs,           :
                               :
    v.                        :          C.A. No. 11-564S
                               :
ASTONISH RESULTS, L.P.,        :
     Defendant.              :

## MEMORANDUM AND ORDER

Plaintiffs in these two matters moved for sanctions[1] following the discovery over a year into the litigation that there is no diversity of citizenship between Plaintiffs and some of the members of Defendant Astonish Results, LLC ("Astonish").  As a result of the lack of diversity jurisdiction, the underlying actions were dismissed without prejudice on March 6, 2013.  These motions for sanctions arise not only under Rule 11 of the Federal Rules of Civil Procedure, but are also based on Rules 16(f), 26 and 37, as well as on 28 U.S.C. § 1927, which permits the imposition of sanctions for conduct that unreasonably and vexatiously multiplies the proceedings

---

[1] The motions are ECF No. 62 in both cases.

in any case.  By text order on March 7, 2013, the motions were denied;[2] this Memorandum and

Order explicates the Court's findings and analysis.[3]

## I.        Procedural Background

Plaintiffs Augustyniak Insurance Group, Inc. ("Augustyniak"), and Groninger Insurance

Agency, LLC, ("Groninger") are two of several insurance agencies that, together with various

principals of each agency,[4] have sued Astonish, a Delaware limited liability company, alleging

breach of contract, fraud in the inducement, breach of fiduciary duty and breach of the

obligations of good faith and fair dealing, all claims arising from a Marketing Agreement

between Astonish and the agencies to supply websites, digital marketing, training and consulting

services.  The plaintiffs in all of the cases have the same counsel, and the cases have moved on

somewhat parallel paths.  In total, nine insurance agencies have brought cases or claims,[5] which

have been transferred to, removed to, or filed in this Court, against Astonish or its predecessor

Astonish Results, LP.  In every instance, the basis asserted for federal jurisdiction was diversity

of citizenship pursuant to 28 U.S.C. § 1332(a)(1).  All of the cases transferred to this Court from

---

[2] The Court denied these motions without waiting for Astonish's response and without conducting an evidentiary hearing.  This approach was adopted in the interest of efficiency and to avoid the satellite litigation that regrettably may be spawned by sanctions motions.  CQ Int'l Co. v. Rochem Int'l, Inc., 659 F.3d 53, 62 (1st Cir. 2011) (Rule 11 to streamline cases, not to cause satellite litigation or to require district courts to punctiliously analyze every argument); Unanue-Casal v. Unanue-Casal, 898 F.2d 839, 843 (1st Cir. 1990) (courts should avoid satellite litigation over imposition of sanctions); Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073,1086 (7th Cir. 1987) (Cudahy, J., dissenting) (court should not remand for further factual findings to avoid "creating a whole new cottage industry of sanctions").  While due process mandates notice and potentially a hearing when the court is inclined to grant sanctions, they are unnecessary when sanctions are denied.  Jacobsen v. Katzer, No. 06-01905, 2007 WL 4357592, at *2-3 (N.D. Cal. Dec. 11, 2007) (denying motion for sanctions without hearing or further briefing); Keefer v. Durkos, No. 04-187, 2006 WL 2773246, at *3 n.2 (W.D. Pa. Sept. 25, 2006).

[3] While the district court is afforded extraordinary deference in denying sanctions, even a denial should be accompanied by enough so that the court's rationale is apparent from the record and supported by facts.  CQ Int'l Co., 659 F.3d at 64; Salois v. Dime Sav. Bank of N.Y., FSB, 128 F.3d 20, 28 (1st Cir. 1997).

[4] In Augustyniak, principal Michael Augustyniak is the other plaintiff.  In Groninger, principals James Groninger and Jonathan Groninger are named as plaintiffs.

[5] In one of the cases, Astonish initiated the action against the insurance agency in state court; the agency removed the case to federal court and brought counterclaims based on diversity.

the Northern District of Texas or removed to this Court from the Providence County Superior Court were dismissed by stipulation shortly after transfer, as was one of the cases originally filed here.

Of the remaining four cases,[6] three, Augustyniak, Groninger and Mohler, were dismissed without prejudice as a result of Astonish's discovery at the end of January 2013 that, as of the time of the initiation of each action, it had members who were citizens of the same states as the respective Plaintiffs (Augustyniak, Florida; Groninger, Pennsylvania; and Mohler, Pennsylvania).  Only one case, A.J. Amer, remains pending in this Court.

Mohler was newly filed when the discovery of no diversity was disclosed.  It has been refiled in the Providence County Superior Court without incident.  However, Augustyniak was filed here and has been pending in this Court since October 14, 2011, while Groninger was filed here on November 18, 2011.  Although both have already been refiled in the Providence County Superior Court and there are no statute of limitations issues prejudicing either the Augustyniak or the Groninger Plaintiffs, both have filed motions for sanctions, arguing that Astonish owed them and the Court a duty to investigate the citizenship of its members promptly upon the initiation of the actions and that the Court may infer from the delayed discovery that Astonish acted in bad faith or for an improper purpose.  They seek sanctions in the total amount of $107,317, which

---

[6] All four cases were originally filed in this Court.  Their full captions are:

Augustyniak Insurance Group., Inc., et al. v. Astonish Results, L.P., C.A. No. 11-464S (D.R.I. filed Oct. 14, 2011) ("Augustyniak").
Groninger Insurance Agency, LLC, et al. v. Astonish Results, L.P., C.A. No. 11-564S (D.R.I. filed Nov. 18, 2011) ("Groninger").
A.J. Amer Agency Inc. v. Astonish Results, LLC, C.A. No. 12-351S (D.R.I. filed May 9, 2012) ("A.J. Amer").
Ira G. Mohler & Son, Inc. v. Astonish Results, LLC, C.A. No. 12-943S (D.R.I. filed Dec. 27, 2012) ("Mohler").

constitute the attorney's fees and expenses claimed to have been expended on these matters in the approximately fifteen months that they were pending here.

## II.   Legal and Factual Background

Prior to the institution of Augustyniak and Groninger, Astonish had been structured as a Rhode Island limited partnership named Astonish Results, LP.  It was so named in the earlier-filed suits; for those cases, the citizenship of Defendant depended on the citizenship of its partners.[7]  Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 138 (1st Cir. 2004).  Unaware of any change, both Augustyniak and Groninger named Astonish Results, LP, as the Defendant in their actions.  However, as the Answer revealed and discovery confirmed, less than a month before Augustyniak was filed, and two months before Groninger was filed, Astonish converted itself into a Delaware limited liability company called Astonish Results, LLC.  As a result of this transformation, the factual exegesis necessary to determine whether there is diversity in Augustyniak and Groninger must focus not on the citizenship of the partners of the limited partnership named in the Complaints, but rather on the citizenship of the members of Astonish Results, LLC.  See D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011) (per curiam) (citizenship of limited liability company is based on the citizenship of all of its members); Am. Fiber & Finishing, 362 F.3d at 141-42 (where plaintiff names a diverse entity, but that entity had transferred its interest to a non-diverse entity before the filing of the action, no diversity jurisdiction).

In invoking this Court's diversity jurisdiction, Plaintiffs' jurisdictional pleading in both Complaints was somewhat sloppy.  Both averred that all individual Plaintiffs are domiciled in the States of Florida and Pennsylvania respectively; since domicile is dispositive of citizenship

---

[7] The record does not reveal whether the partners of Astonish Results, LP, would also have divested this Court of diversity jurisdiction.

for a natural person, these allegations are without flaw.  Augustyniak, ECF No. 1 ¶ 2; Groninger, ECF No. 1 ¶¶ 2-3; see Garcia Perez v. Santaella, 364 F.3d 348, 350-51 (1st Cir. 2004). However, the Augustyniak Complaint described the entity Plaintiff as a "Florida corporation," but made no reference to its citizenship or its principal place of business, leaving open the possibility that another state might be material for a complete diversity analysis.  Augustyniak, ECF No. 1 ¶ 1; Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 59 (1st Cir. 2005) (corporations have dual citizenship, the state of incorporation and the state where it has its principal place of business).  The Groninger Complaint averred that the Plaintiff entity is a Pennsylvania limited liability company, but was silent regarding the citizenship of its members or even how many members it had at the moment of filing; this left wide open the possibility of an unknown number of other states that might need to be considered to determine if complete diversity existed.  Groninger, ECF No. 1 ¶¶ 1-3; Preferred Merch. Hood, LLC v. Family Dollar, Inc., No. 06-067, 2006 WL 1134915, at *1 (D.N.H. Apr. 25, 2006) (complaint that recites state under whose law limited liability company organized, but makes no reference to citizenship of members, does nothing to inform the jurisdictional inquiry).  Both Complaints stated (incorrectly) that Astonish is "a Rhode Island limited partnership," and, in Augustyniak, that "[n]one of the real parties in interest in this case, other than Plaintiffs, are citizens of Florida," while in Groninger, "[n]one of the real parties in interest in this case, other than Plaintiffs, are citizens of Pennsylvania."  Augustyniak, ECF No. 1 ¶¶ 3, 6; Groninger, ECF No. 1 ¶¶ 4, 7.  On this foundation, both Complaints asserted that this Court has jurisdiction based on diversity pursuant to 28 U.S.C. § 1332.  Id.

The jurisdictional allegations of both Complaints were insufficient as a matter of law to invoke diversity jurisdiction under 28 U.S.C. § 1332.  Cameron v. Hodges, 127 U.S. 322, 324

(1888).  In addition to disregarding the principal place of business of the Augustyniak entity and the citizenship of the members of both limited liability companies, (the Groninger entity and Astonish), the Complaints left open the possibility that a "stateless" member might defeat diversity.  D.B. Zwirn, 661 F.3d at 126.  This inconclusive jurisdictional pleading is similar to that in Zwirn, where the First Circuit questioned *sua sponte* whether the case was properly in federal court based on an inadequate assertion of diversity jurisdiction.  Id. at 125-27.

Defendant's responsive pleading was equally unfocused on the jurisdictional allegations – the Answers introduced Astonish as a limited liability company with no reference to its members or their citizenship.  Astonish denied knowledge regarding the states of residence, incorporation and formation of the Plaintiffs, and avers that it ceased to be a limited partnership prior to the filing of both cases.  Augustyniak ECF No. 12 ¶¶ 1-3, ECF No. 26 ¶¶ 1-3; Groninger ECF No. 2 ¶¶ 1-4, No. 25 ¶¶ 1-4.  In answering the jurisdictional paragraph, it neither admitted nor denied, but rather employed the common device of averring that the jurisdictional allegations "set forth a legal conclusion to which no response is required."  Augustyniak ECF No. 12 ¶ 6; Groninger ECF No. 2 ¶ 7.

After a delay for motions that resulted in the dismissal of other parties, Plaintiffs and Defendant turned to discovery – and the litigation quickly became contentious.  In all, Plaintiffs have propounded at least 113 document requests to Defendant.  Augustyniak ECF No. 49-1; Groninger ECF No. 49-1.  Now, they contend that they asked multiple questions seeking information regarding the citizenship of the members of Astonish to buttress their pleading of diversity jurisdiction, and that Defendant wrongly objected.  However, none of requests brought to the Court's attention inquire about the members of Astonish; rather, they ask about the partners of the predecessor entity, Astonish Results, LP.  Moreover, none of these ask about

6

citizenship; instead, they ask for information that seems rather remote from the claims and defenses in these cases, raising a question whether the requested information is within the scope of Rule 26(b)(1).  See, e.g., Request No. 25 (tax returns of general partners for three years); Request No. 27 (all documents sent to or from new limited and general partners); Requests No. 108-109 (drafts and executed partnership agreements for eight years).  Augustyniak ECF No. 49-1; Groninger ECF No. 49-1.

Unsurprisingly, Defendant sidestepped these discovery requests with objections.  The record does not reflect any motion practice aimed at compelling production of information pertaining to citizenship of either partners or members.  Importantly, Astonish's objections frequently reminded Plaintiffs that "Astonish is no longer a limited partnership."  Augustyniak ECF No. 49-2 at 10; Groninger ECF No. 49-2 at 10.  There was no danger here that Plaintiffs were lulled by an assumption that Astonish understood that its requests about partners were intended to seek information about the citizenship of members.  Cf. D.B. Zwirn, 661 F.3d at 125 n.2 (parties understood erroneous request for partners' citizenship to refer to members' citizenship).  It seems clear that Plaintiffs never (as far as the Court is aware) propounded any discovery to ask about relevant jurisdictional facts.

To all appearances, all parties (and the Court) continued working on these cases, oblivious to the fact that the citizenship of the members of Astonish (or the members of the Groninger limited liability company) could reveal a lack of subject matter jurisdiction.  The first inkling that there might be a problem with diversity jurisdiction originated as a result of testimony elicited on September 27, 2012, that the chief executive officer of Astonish lived in Florida.  Plaintiffs' counsel asked whether this individual was a member of Astonish, and

Defendant's counsel promised to look into the matter and advise if complete diversity was lacking in Augustyniak. Augustyniak ECF No. 62-1 at 5-6.

The resulting investigation exposed that the individual referred to at the deposition (who was not the Florida-based diversity-buster identified later) was an indirect member of Astonish whose interest was held by a trust, the analysis of whose citizenship led Astonish's counsel into a time-consuming factual and legal exercise that ended with the discovery of a circuit-split over what facts are determinative of citizenship. As a result of this unsettled state of affairs, on January 16, 2013, when obliged to respond to Plaintiffs' Amended Complaints, Defendant denied the existence of diversity jurisdiction in Augustyniak. Augustyniak ECF No. 51 ¶ 4. Still completely unfocused on the citizenship of its other members and unaware of any other issues with diversity, in Groninger and Mohler where no question had been raised, Astonish's Answer to the Amended Complaint reiterated its original response: "[t]he allegations . . . set forth a legal conclusion to which no response is required." Groninger ECF No. 51 ¶ 5; Mohler ECF No. 5 ¶ 3.

The denial of diversity jurisdiction in the Augustyniak Answer must have finally awakened Plaintiffs to the need to focus on the jurisdictional facts. On January 30, 2013, Plaintiffs, apparently for the first time, sent a letter demanding that Astonish identify all its members.[8] The next day, January 31, 2013, Astonish complied by providing Plaintiffs with a list that revealed two members whose residency raised a significant question whether there was diversity in three of the four cases.

---

[8] Plaintiffs' telling of the story completely omits this chapter. Their motions for sanctions make no reference to sending a letter with a demand for the list of members or to receiving a list the next day; the Court learned of the letter and list from Astonish's counsel at the status conference held after the sanctions motions were filed. This lack of candor is troubling in light of Plaintiffs' argument that the Court should infer misconduct by Astonish based on the filing of evasive discovery and pleading responses.

Astonish's counsel have credibly represented that January 31, 2013, was the first time they realized that there was no diversity jurisdiction in <u>Augustyniak</u>, <u>Groninger</u> and <u>Mohler</u>.  As a result, on February 1, 2013, Astonish filed its motion to dismiss for lack of diversity jurisdiction in all three cases.  In <u>Augustyniak</u>, the motion was accompanied by the affidavit of Astonish's chief operating officer averring that Joseph Amaral, a member of Astonish since prior to the filing date of the Complaint, has been a resident of Florida throughout the same period. <u>Augustyniak</u> ECF No. 57-2.  At the status conference, counsel confirmed that Mr. Amaral has also been a citizen of Florida,[9] destroying diversity jurisdiction.  Similarly, in <u>Groninger</u>, Defendant's affidavit averred that Noreen Johnson, a member of Astonish since prior to filing of the <u>Groninger</u> Complaint, had been a resident of Pennsylvania; defense counsel orally confirmed that she has also continuously been a citizen of that state, destroying diversity.  <u>Groninger</u> ECF No. 57-2; <u>see</u> <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 361 n.1 (1st Cir. 2001) (appropriate for court to be pragmatic and assume assertion of residency was meant as citizenship in grappling with jurisdictional dispute).  Plaintiffs did not dispute any of these jurisdictional facts. As a result, <u>Augustyniak</u>, <u>Groninger</u> and <u>Mohler</u> were dismissed without prejudice on March 6, 2013.

## III.    **Jurisdiction to Address Sanctions When Underlying Litigation Dismissed**

I begin with a threshold question: with no diversity jurisdiction over the underlying matters, can this Court nevertheless entertain a motion for sanctions based on the events surrounding the discovery that there is no diversity?  It is clear that it can – it is well within this Court's inherent power to engage in judicial actions such as the imposition of sanctions despite the lack of power to decide the case on the merits.  <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 138

---

[9] Citizenship is determined on the basis of domicile, not residence.  Therefore, Defendant's affidavits averring to the states of residence of members who lived in Florida and Pennsylvania still fell short of the mark.  <u>Pollution Control Indus. of Am., Inc. v. Van Gundy</u>, 21 F.3d 152, 156 n.6 (7th Cir. 1994).

(1992) ("a federal court may consider collateral issues after an action is no longer pending . . . [A]n imposition of a Rule 11 sanction is not a judgment on the merits of an action.") (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)).   Indeed, it is well settled that the district court has the power to impose Rule 11 sanctions notwithstanding the lack of subject matter jurisdiction over the case.  See, e.g., Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 100 (1st Cir. 2001); Toegemann v. Univ. of R.I., No. 90-1878, 1991 U.S. App. LEXIS 7099, at *5 (1st Cir. Apr. 3, 1991); Unanue-Casal, 898 F.2d at 841.  When the underlying action is dismissed without prejudice due to the late discovery of the lack of diversity jurisdiction, the court retains the power to consider whether the delay in the discovery of lack of diversity jurisdiction is sanctionable.  Wojan v. Gen. Motors Corp., 851 F.2d 969, 971-73 (7th Cir. 1988); see Mills v. Brown, 372 F. Supp. 2d 683, 693 (D.R.I. 2005) (citing Wojan with approval).

## IV.   Scope of Magistrate Judge Authority to Determine Post-Dismissal Sanctions Motion

These motions for sanctions have been referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Before addressing their merits, I pause to explain why this is appropriately a determination pursuant to § 636(b)(1)(A), which may be reconsidered by the district court only where the decision is shown to be clearly erroneous or contrary to law, and not a report and recommendation pursuant to § 636(b)(1)(B), which is subject to de novo review.  Compare Fed. R. Civ. P. 72(a) (nondispositive determinations of magistrate judges may be set aside if clearly erroneous or contrary to law), with Fed. R. Civ. P. 72(b) (dispositive motions decided by magistrate judges subject to de novo review by district court).

The Federal Magistrates Act confers authority on district judges to designate magistrate judges to hear pretrial motions.  Powershare, Inc. v. Syntel, Inc., 597 F.3d 10, 13 (1st Cir. 2010).  Magistrate judges serve as aides to, and under the supervision of, district judges, but are not

themselves Article III judicial officers and ordinarily may not decide motions that are dispositive either of a case or of a claim or defense within a case.  Id.  This is so because "[t]he Constitution requires that Article III judges exercise final decisionmaking authority."  Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1463 (10th Cir. 1988); see Stauble v. Warrob, Inc., 977 F.2d 690, 693-94 (1st Cir. 1992).  Dispositive motions include those enumerated in 28 U.S.C. § 636(b)(1)(A), but this list is not exhaustive; rather, it simply "informs the classification of other motions as dispositive or nondispositive."  Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 6 (1st Cir. 1999).  Thus, whether I may decide this motion or must report my findings and recommend a decision to the district court depends on how a post-dismissal sanctions motion seeking recovery of attorney's fees should be classified under the Federal Magistrates Act.

In late 2012, a magistrate judge from Illinois faced this question and wrote a comprehensive analysis.  See Cleversafe, Inc. v. Amplidata, Inc., 287 F.R.D. 424 (N.D. Ill. 2012).  After a discussion of the history of the Federal Magistrates Act and a circuit-by-circuit analysis of the law, he concluded that only the Seventh Circuit has blanketly held that motions for sanctions are to be treated as dispositive.  Every other circuit, including the First, has held that motions for sanctions are generally non-dispositive so that decisions of magistrate judges are subject to reconsideration by the district court only on a showing that the order is clearly erroneous or contrary to law.  Id. at 426-30 & n.3 (to be clearly erroneous, the decision must strike the court as "wrong with the force of a five-week-old, unrefrigerated dead fish.").

Because motions for sanctions are not specifically excepted under 28 U.S.C. § 636(b)(1)(A) and, in general, are not of the same genre as the enumerated motions, they should be treated as nondispositive unless the motion seeks a sanction that fully disposes of a claim or defense.  Phinney, 199 F.3d at 6.  In determining whether a specific sanctions motion is

nondispositive, the focus should be on whether the sanctions motion is dispositive of any claim; if not, motions for sanctions have generally been reviewed under the clearly erroneous standard and not subjected to de novo review.  See Berry v. Worldwide Language Res., Inc., No. 08–438, 2010 WL 5027211, at *1 (D. Me. Dec. 3, 2010) (magistrate judge's order denying sanctions based on perjury, witness tampering and discovery abuses reviewed for whether order is "clearly erroneous [or] contrary to law"); Sheppard v. River Valley Fitness One, L.P., No. 00-111, 2004 WL 102493, at *5 (D.N.H. Jan. 22, 2004) (motions for sanctions are generally treated as nondispositive), modified on other grounds, 428 F.3d 1 (1st Cir. 2005).  Thus while a sanctions motion that seeks to preclude a party from litigating a claim is plainly dispositive, a post-judgment motion like this one is focused not on the claims (which are already dismissed) but on the conduct of counsel; therefore, it is not dispositive.  Heghmann v. Fermanian, No. 99-336, 2000 WL 1742122, at *1 n.3 (D. Me. Nov. 27, 2000) (post-judgment motion for sanctions focused on pretrial conduct appropriate for magistrate judge to hear and determine).  Cf. U.S. ex rel. Ne. Concrete Prods., LLC v. M.A. Mortenson Co., No. 05-135, 2006 WL 696196, at *1 n.1 (D. Me. Mar. 15, 2006) (magistrate judge decides post-dismissal sanctions motion under Rule 11 as a recommendation in an abundance of caution in light of circuit split over how to proceed); Plante v. Fleet Nat'l Bank, 978 F. Supp. 59, 64-65 (D.R.I. 1997) (post-dismissal Rule 11 sanctions motion decided de novo because magistrate judge presented report and recommendation and neither party objected; court does not need to decide whether de novo review appropriate).

Because these sanctions motions are nondispositive, I will determine them through a Memorandum and Order, laying out my findings and conclusions.

V.      **Legal Analysis**

a.      **Standard of Review**

The imposition of sanctions is committed to the discretion of the district court.  Mendez-Aponte v. Bonilla, 645 F.3d 60, 68 (1st Cir. 2011); Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 243 (1st Cir. 2010).  Sanctions can have a contrapuntal effect, adjusting the scales so that the extra time, effort and expense to one party, which occurs in consequence of the dereliction of the other, can be repaid in some equitable fashion.  Anderson v. Beatrice Foods Co., 900 F.2d 388, 395 (1st Cir. 1990).  Because Plaintiffs present a salmagundi of theories, I lay out the standard applicable to each.

Rule 11(b) permits, but does not require, the court to sanction an attorney for the filing or signing of a paper for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" or for asserting or denying factual contentions that either lack evidentiary support or are unlikely to have such support after an opportunity for investigation or discovery.  Fed. R. Civ. P. 11(b).  While the Rule allows the court to impose sanctions, it is not a strict liability provision and a showing of "at least culpable carelessness is required before a violation of the Rule can be found."  CQ Int'l Co., USA, 659 F.3d at 60 (quoting Citibank Global Mkts., Inc. v. Santana, 573 F.3d 17, 32 (1st Cir. 2009)).  Sanctions under Rule 11 may be imposed only for misconduct in presenting "a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it."  Balerna v. Gilberti, No. 12-1302, 2013 WL 693109, at *4 (1st Cir. Feb. 27, 2013).  Rule 11 has a safe harbor provision, set out in Rule 11(c)(2), which strictly mandates that a motion for sanctions cannot be filed unless it was first served on the opposing party who must be afforded twenty-one days to withdraw the offending pleading.  Fed. R. Civ. P. 11(c)(2).  When the procedural safeguards of

Rule 11 are disregarded, Rule 11 sanctions must be denied.  Lamboy-Ortiz, 630 F.3d at 244-45;

see Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1030 (8th Cir. 2003) (abuse of discretion

to issue Rule 11 sanctions when party did not comply with procedural requirements).

      While the First Circuit has not clearly circumscribed who bears what burden of proof to

establish the factual predicate to the imposition of sanctions, other courts have held that the

burden is on the Rule 11 movant, and that "[a]ll doubts regarding whether Rule 11 has been

violated should be resolved in favor of the signer of the paper."  See, e.g., McMahon Sec. Co. v.

FB Foods, Inc., No. 8:04-1791, 2006 WL 2092643, at *2 (M.D. Fla. July 27, 2006) (quoting

Georgene M. Vairo, Rule 11 Sanctions: Case Law, Perspectives & Preventative Measures 223

(Richard G. Johnson ed., ABA, 3d ed. 2004)).  Whether there has been a breach of duty under

Rule 11 depends on the objective reasonableness of the litigant's conduct under the totality of the

circumstances.  Lichtenstein v. Consol. Servs. Grp., Inc., 173 F.3d 17, 23 (1st Cir. 1999).  If a

litigant admits he knew the truth but nevertheless signed an answer he had reason to believe was

both incorrect and misleading, no more is needed to warrant the imposition of sanctions.

Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426 (1st Cir. 1992).  On the other hand, as long as

there has been no fraud, if the movant's conduct is also deficient so that neither party has clean

hands, neither party should profit through sanctions from the delinquency of the other.  Anderson

v. Beatrice Foods Co., 129 F.R.D. 394, 403-04 (D. Mass. 1989).  Rule 11 sanctions are reserved

for clear cases of abuse.  See Protective Life Ins. Co. v. Dignity Viatical Settlement Partners,

L.P., 171 F.3d 52, 58 (1st Cir. 1999); Vairo, supra at 666.  The judge "should take pains neither

to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms."

Anderson, 900 F.2d at 395.

Sanctions under 28 U.S.C. § 1927 may be imposed in circumstances where Rule 11 sanctions are not available.  Lamboy-Ortiz, 630 F.3d at 245-46.  They are warranted, in the discretion of the court, to sanction an attorney who "unreasonably and vexatiously" multiplies the proceedings in the case.  Sanctions are appropriate when, viewed objectively, the attorney's conduct manifests either intentional or reckless disregard of the attorney's duties to the court.  Cruz v. Savage, 896 F.2d 626, 631-32 (1st Cir. 1990) ("serious and studied disregard for the orderly process of justice") (quoting United States v. Nesglo, Inc., 744 F.2d 887, 891 (1st Cir. 1984)).  While a demonstration of subjective bad faith is not a precondition to the imposition of sanctions in this Circuit, a finding of no concrete or direct evidence of bad faith is a more than sufficient foundation to deny such a motion.  Id.; see Steinlage v. Mayo Clinic Rochester, 235 F.R.D. 668, 674 (D. Minn. 2006).  In considering the conduct of a party that may have been less than diligent in tracking down jurisdictional facts, without a finding of recklessness, bad faith or improper motive, sanctions under § 1927 are not warranted.  McAuslin v. Grinnell Corp., Nos. 97-775, 97-803, 2000 WL 726886, at *5 (E.D. La. June 5, 2000).  Thus, § 1927 does not apply to "[g]arden-variety carelessness or even incompetence."  Lamboy-Ortiz, 630 F.3d at 245-46 (quoting Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008)).

Plaintiffs' motions advert to Rules 16(f), 26 and 37 as additional bases for sanctions.  Rule 16(f) focuses on conduct relating to the scheduling or pretrial conference, or to a failure to comply with the order that emerges from the Rule 16 conference.  While Plaintiffs do not specify what section of Rule 26 they rely on, Rule 26(g)(3) creates the potential for sanctions arising from the certification of discovery disclosures and for requests, responses or objections that are inconsistent with the law or rules or interposed from an improper purpose.  They similarly

15

invoke Rule 37 without further detail; Rule 37(b) lays out the consequences for failing to comply with a discovery order, while Rule 37(c-f) addresses specific discovery defaults.

### b.      Whether Sanctions are Appropriate

Plaintiffs argue that Defendant had an affirmative duty to focus on and ascertain the citizenship of its members prior to the filing of its Answer.  Accordingly, Plaintiffs contend, Defendant should have known that there was no diversity jurisdiction and had an affirmative duty to disclose that to Plaintiffs and to this Court.  Plaintiffs contend that Defendant's duty trumps the absence of proof of bad faith or any intentional conduct – because Defendant failed to discharge its duty to focus on the citizenship of its members at the very outset, these cases proceeded for over a year in this Court, which lacked jurisdiction.  As a result, Plaintiffs believe they should be compensated by an award of all of their fees and costs in litigating these cases.  Alternatively, Plaintiffs contend that this Court can infer an intentional strategy to cover-up the jurisdictional facts from the timing of the motions to dismiss.  Specifically, they argue that Defendant intentionally and strategically delayed revealing that there was no diversity jurisdiction until shortly after Plaintiffs filed a motion to compel discovery and a motion to strike Defendant's affirmative defenses and counterclaims.  While conceding that there is no statute of limitations benefit to Defendant from the timing, Plaintiffs argue that the juxtaposition of the motions to dismiss based on lack of diversity jurisdiction on the heels of their motions to compel and to strike permits the interference of intentional bad faith.

At the vortex of Plaintiffs' motions for sanctions is their argument that Astonish had a duty to determine the jurisdictional facts before answering the Complaints.  Therefore, it is appropriate to start the analysis with the well-settled proposition that the burden to establish the jurisdictional facts rests squarely on the party who invokes the court's diversity jurisdiction.

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); Valentin, 254 F.3d at 366.  The party

who invokes the court's jurisdiction must support its allegation with competent proof of

jurisdictional facts.  Melendez-Garcia v. Sanchez, 629 F.3d 25, 40 (1st Cir. 2010) (the party

invoking subject matter jurisdiction that is disputed has the burden of proving by a

preponderance of the evidence the facts supporting jurisdiction); W. Transp. Co. v. Couzens

Warehouse & Distribs., Inc., 695 F.2d 1033, 1038 (7th Cir. 1982).  Consistent with this principle,

this Circuit has noted that the seeming inequity of dismissing the case when the losing party

failed to challenge diversity jurisdiction is offset by the reality that it was the injured party who

invoked federal jurisdiction by removing the matter, yet failed to discover the jurisdictional facts.

Diaz-Rodriquez, 410 F.3d at 62 n.5.

    Plaintiffs cite three cases in support of their argument that Defendant had an affirmative

duty to investigate the jurisdictional facts immediately upon receipt of the Complaint.  None

stands for that principle.  Rather, all three point to the party who invokes federal jurisdiction as

the one with the obligation to investigate the jurisdictional facts.  Pollution Control Indus. of

Am., Inc., 21 F.3d at 155-56 (duty to investigate jurisdictional facts imposed on plaintiff); Kale

v. Combined Ins. Co. of Am., 861 F.2d 746, 758 (1st Cir. 1988) (plaintiff has duty to investigate

claims before asserting them); Nat'l Loan Investors, L.P. v. W. Sugar Co., 366 F. Supp. 2d 881,

884 (D. Neb. 2005) (plaintiff failed to investigate jurisdictional facts before filing action).  In

Pollution Control, each party blamed the other for the failure of both to flag the lack of diversity

jurisdiction.  21 F.3d at 153.  Despite the claim of the plaintiff that the defendants were best

situated to determine incomplete diversity, the sanctions were imposed on the plaintiff by the

district court, which held that, "[c]ounsel may not drop papers into the hopper and insist that the

court or opposing counsel undertake bothersome factual or legal investigation to ascertain

whether *his* claims are actually well-founded in fact and in law." Id. at 154 (emphasis in original). The appellate court agreed that the primary duty rests on the plaintiff, but remanded to consider defendants' failure to mitigate their fees as a result of their failure to promptly disclose their residency (and therefore citizenship) in the same state as the plaintiff. Id. at 156. At most, this case and the others cited by Plaintiffs stand for the proposition that, when both parties could have been more diligent in analyzing jurisdictional facts, the duty is shared equally and sanctions are not appropriate. Steinlage, 235 F.R.D. at 674.

Here, the Court finds that it was Plaintiffs that failed in their obligation to properly plead the factual foundation for diversity jurisdiction and then, for the duration of the entire period for which they now seek sanctions, failed to attempt to buttress their inadequate jurisdictional pleading with the requisite jurisdictional facts. While it is also true that Defendant – and the Court – failed to focus on whether these cases were properly in this Court, as soon as Plaintiffs squarely posed the question, Astonish responded within twenty-four hours. The fact that the pivotal jurisdictional facts were uniquely within the control of Astonish is beside the point, when it was Plaintiffs who invoked the diversity jurisdiction of this Court, yet failed adequately to plead the right jurisdictional facts and failed to pursue discovery to ascertain the jurisdictional facts. They cannot now shift the entire burden to Defendant, whose conduct is no more culpable than theirs (or that of this Court).[10] Pollution Control, 21 F.3d at 156; Steinlage, 235 F.R.D. at

---

[10] The failure of parties and the district court to focus early on whether there is diversity jurisdiction is like a bad penny that keeps turning up in cases with a party that is either a limited liability company or a limited partnership. D.B. Zwirn, 661 F.3d at 125 (no inquiry about citizenship of partners of limited partnership until appeal); Pramco, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 52-54 (1st Cir. 2006) (no consideration of citizenship of members of limited liability company from initiation of action in 1999 until raised on appeal in 2005); Am. Fiber & Finishing, 362 F.3d at 138 (change of party from a corporation to a limited partnership should have raised a red flag but two years of discovery, summary judgment and appeal ensured before diversity questioned.). "Although this land mine is obvious in hindsight, no one questioned the district court's subject matter jurisdiction at the time." Am. Fiber & Finishing, 362 F.3d at 138. While not an excuse, the ubiquitousness of the error is another reason not to award fees to one scofflaw and sanction the other.

674; see Chemiakin v.Yefimov, 932 F.2d 124, 131 (2d Cir. 1991) (Kearse, J., dissenting) (when district court failed to notice lack of diversity jurisdiction, sanctions inappropriate unless bad faith or frivolous conduct by party invoking federal jurisdiction).

Plaintiffs mistakenly undergird their sanctions motions with a decision from the District of New Jersey. Itel Containers Int'l Corp v. P.R. Marine Mgmt., 108 F.R.D. 96 (D.N.J. 1985). They argue that Astonish's Answers, its discovery responses, its assertion of affirmative defenses and counterclaims in the pleading that denies diversity jurisdiction and the timing of the motion to dismiss are all analogous to what happened in Itel, where the court found that the plaintiff, a Delaware corporation, should be awarded all of its fees and costs as a result of the defendant's delay in disclosing that it also was incorporated in Delaware. Id. at 100, 105-06. This argument is way off base – in contrast to what happened here, the Itel court was addressing egregious conduct by a defendant whose counsel had knowingly and intentionally adopted a strategy to cover-up the lack of diversity jurisdiction for the improper purpose of inducing the plaintiff to allow the statute of limitations to lapse. Id. at 99-100. The clever phrasing of the answer, the "pernicious" assertion of counterclaims and the evasive discovery responses that Plaintiffs point to as analogous must be viewed in the toxic light of this affirmative and intentional misconduct. Id. at 98 & n.1.

Far from resembling the Itel facts, the facts in Augustyniak and Groninger are analogous to those in Wojan, 851 F.2d 969. In Wojan, the plaintiff, a citizen of Michigan, sued General Motors ("GM") in federal court in Illinois based on diversity jurisdiction. Id. at 970. GM admitted it was a Delaware corporation, denied knowledge of the plaintiff's citizenship and admitted diversity; it was silent as to its own principal place of business, which would have established its citizenship in Michigan, defeating diversity. Id. For five and a half years, the

case proceeded with neither the parties nor the court paying any attention to GM's obvious nexus to Michigan, until the litigants focused on a Michigan case in which GM was a defendant, and the light bulbs finally went on.  Id. at 971.  The matter was promptly dismissed, but the plaintiff asked for sanctions based on GM's failure to deny her jurisdictional allegations.  Id.  The court noted that the plaintiff herself had failed to include allegations of the appropriate jurisdictional facts (the location of GM's principal place of business).  Id. at 974.  While GM's Answer did not help, the plaintiff had the duty to ensure that her jurisdictional allegations rested on a sound factual basis; she could not rely on GM's acquiescence.  Id.  "Litigants, particularly those who bear the burden of proof, must be prepared to establish the existence of jurisdiction . . . .  Failing to do so, they must be prepared to face sanctions for their dereliction."  Id. at 975.  Thus, although the court confessed to be "stunned that GM's counsel neglected to move for dismissal with a few weeks of the filing, much less waiting five and a half years," where neither party was without fault, the plaintiff's motion for sanctions was denied.  Id. at 975-76.

Turning to Plaintiffs' evidence of specific misconduct, close scrutiny does not lead the Court to any finding of bad faith, improper purpose or reckless disregard of the judicial process.

The first stop is Astonish's Answer to the jurisdictional allegations: it averred that they "set forth a legal conclusion to which no response is required."  By contrast with Itel, where the defendant also pled that it "need not respond," Plaintiffs present no proof that this response was carefully worded as part of a strategy of cover-up.  See Itel, 108 F.R.D. at 98.  Without such evidence, responding to jurisdictional allegations with the statement that the allegations "set forth a legal conclusion to which no response is required" is neither suspicious nor deceptive, as Plaintiffs claim.  Rather, it is the phraseology customarily used in response to the jurisdictional pleading.  See Walker-Cook v. Integrated Health Res., LLC, No. 12-146, 2012 WL 4461159, at

*4 (D. Haw. Aug. 10, 2012) (denying motion to strike response to jurisdictional paragraph that allegations "call for legal conclusions to which no response is required").  Indeed, without proof of a deliberate improper purpose, even overt acquiescence in diversity jurisdiction for over five years would not have been sanctionable.  Wojan, 851 F.2d at 974-75.

Plaintiffs highlight what they claim are duplicitous discovery responses to their inquiries, which they contend were intended to rout out jurisdictional facts.  However, the Court has reviewed the discovery carefully and finds that Plaintiffs did not present a single inquiry intended to discover whether all of the members of Astonish, at the time of the initiation of these actions, were citizens of states other than Florida or Pennsylvania.  Defendant's objections to these requests seem within the scope of Rule 26 and might well have been sustained if brought to this Court by a motion to compel.  There is no fodder for sanctions in the discovery responses.  Plaintiffs also make much of the inclusion of affirmative defenses and a counterclaim in the Answer in which Astonish unveiled the problem with diversity jurisdiction.  The same accusation could be hurled at Plaintiffs, who filed a comprehensive Amended Complaint months after becoming aware of the possibility that there might not be diversity jurisdiction at the deposition in September 2012.  In light of Plaintiffs' higher duty to investigate as the party asserting claims, this argument cannot fly.

Finally, Plaintiffs contend that the Court may infer an intentional strategy, analogous to what was exposed in Itel, from the timing of the disclosure of the lack of diversity jurisdiction, coming just after Plaintiffs filed a motion to compel discovery and to strike Astonish's affirmative defenses and counterclaims.  In Itel, the strategic delay was to cover-up the lack of diversity jurisdiction until the statute of limitations had run.  The strategy argument here makes little sense.  Defendant is just as adversely affected by the discovery of no diversity jurisdiction

21

as are Plaintiffs.  From Defendant's perspective, the lack of diversity jurisdiction forces it to start over defending three cases brought by the same attorney, leaving a fourth still pending in this Court.  Moreover, because the same motion to compel and motion to strike were also filed in A.J. Amer, the case that remains in this Court, and both have now been decided in the first instance (the motion to compel by a Memorandum and Order and the motion to strike by a Report and Recommendation), this Court is readily able to find that it is implausible that fear of these motions could have caused Astonish to reveal the lack of diversity jurisdiction at the moment when it did.  In any event, there is no need for such speculation – at the status conference held at Plaintiffs' request to address the jurisdictional problem, Astonish's counsel informed the Court of Plaintiffs' letter demanding the list of Astonish's members and laid out a far more credible history of the events that triggered the filing of the jurisdictional motion to dismiss.  Writing with the benefit of hindsight regarding the strength of Plaintiffs' motion to strike, the Court finds that the timing of the filing of the motion to dismiss does not permit the inference of a strategic cover-up of jurisdictional facts.

When these findings and legal principles are lined up beside the standards set out in the various Rules and the statute invoked by Plaintiffs to justify their motions, it is plain that sanctions must be denied.

Plaintiffs' Rule 11 motion is dead on arrival based on their complete lack of compliance with the Rule's strict procedural safeguards.  Plaintiff did not attempt to comply with the safe harbor requirement in Rule 11(c)(2), which mandates that a motion for sanctions cannot be filed unless it was first served on the opposing party, who must be afforded twenty-one days to withdraw the offending pleading.  Lamboy-Ortiz, 630 F.3d at 244-45.  While not material to the decision because the twenty-one day notice requirement cannot be omitted for any reason, here,

Astonish's prompt response to Plaintiffs' letter demanding the list of members to ascertain whether there was diversity suggests that, if Plaintiffs had complied with Rule 11(c)(2), Astonish would immediately have focused on the jurisdictional issue and withdrawn the Answers that seemingly acquiesced in Plaintiffs' pleading that diversity existed.  In any event, Plaintiffs do not point to any specific filing where there is a clear violation of Rule 11.  To the extent that Astonish's Answers can be criticized, this Court exercises its discretion to deny sanctions because Plaintiffs' own inadequate pleading trumps that of Defendant, establishing both a profound failure to mitigate and lack of clean hands.  Pollution Control, 21 F.3d at 153; Wojan, 851 F.2d 975-76; Steinlage, 235 F.R.D. at 673-74.

The Court's finding that Astonish did not conduct itself in bad faith or with a reckless disregard for this Court's orderly judicial processes precludes an award of sanctions under 28 U.S.C. § 1927.   Cruz, 896 F.2d at 631-32; see Steinlage, 235 F.R.D. at 674.  While Astonish (like Plaintiffs) may have been less than diligent in tracking down jurisdictional facts, without such a finding, sanctions under § 1927 are not warranted.  See McAuslin, 2000 WL 726886, at *5.  Section 1927 does not apply to "[g]arden-variety carelessness" but instead requires that the "attorney's actions . . . evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court."  Lamboy-Ortiz, 630 F.3d at 245-46 (quoting Jensen, 546 F.3d at 64).  To the extent that it is grounded in § 1927, the motion for sanctions is denied.

While Plaintiffs toss in a request for sanctions under Rules 16(f), 26 and 37, they point to no specific provision of any of these rules that they contend was violated and no specific conduct that arguably constitutes a violation.  For example, there was no impropriety associated with the Rule 16 conference and no discovery order requiring Defendant to disclose the citizenship of its

members.  Lacking any foundation, further discussion of sanctions under these rules is not

warranted.  See United States v. Fiume, No. 11-1971, 2013 WL 646484, at *3 (1st Cir. Feb. 22,

2013) ("Because these allusions are ethereal and unaccompanied by any developed

argumentation, we deem them waived."); Vineberg v. Bissonnette, 529 F. Supp. 2d 300, 305

(D.R.I. 2007) (district courts are free to disregard inadequately developed arguments).

At worst, these motions are a case of the pot calling the kettle black.  Under such

circumstances, sanctions are not warranted.

**VI.**   **Conclusion**

For all of the foregoing reasons, by text order on March 7, 2013,  the motion for sanctions

in Augustyniak Insurance Group, Inc. v. Astonish Results, L.P., C.A. No. 11-00464-S, (ECF No.

62) was DENIED and the motion for sanctions in Groninger Insurance Agency, LLC v. Astonish

Results, L.P., C.A. No. 11-00564-S (ECF No. 62) was DENIED.[11]

So ordered.

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 13, 2013

---

[11] These motions were denied on March 7, 2013, while this Memorandum and Order is being entered on March 13, 2013.  The time for objections or appeal from this Memorandum and Order begins to run on the date of the entry of this Memorandum and Order.  Fed. R. Civ. P. 72(a); DRI LR Cv 72(c).